IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


TONNIE NORDMEYER, d/b/a
SUNSHINIE TOWING & SERVICE, and
SUNSHINE TOWING & SERVICE, L.L.C.,


Plaintiffs,

v.                                                      No. 10-cv-792-DRH

THOMAS CUNDIFF, and BENNIE VICK,
individually, and in his official capacity as
Sheriff, Williamson County, Illinois, and
COUNTY OF WILLIAMSON, an Illinois County
Corporation,

Defendants.

## MEMORANDUM AND ORDER

HERNDON, Chief Judge:

Now before the Court is defendants Thomas Cundiff and Bennie Vick, and

Williamson Countys' (collectively, defendants) motion to dismiss plaintiffs Tonnie

Nordmeyer, d/b/a Sunshine Towing & Service and Sunshine Towing & Service

L.L.C.s' (Sunshine Towing) (collectively, plaintiffs) first amended complaint (Doc.

20).  For the following reasons, defendants' motion to dismiss is GRANTED.

## INTRODUCTION AND BACKGROUND

Plaintiffs allege defendants violated their equal protection rights when they

removed Sunshine Towing from the Williamson County Sheriff's approved

rotation list for towing services (*See* Doc. 17).  Defendant Cundiff authorized

Sunshine Towing's placement on the rotation list for the Sheriff's Department of Williamson County in November 2008 (Doc. 17, p. 3).

The allegations at issue stem from an incident involving a donkey in September 2009 (Donkey Incident). A sheriff's deputy responded to a complaint that plaintiff Nordmeyer's husband, Chris Nordmeyer, Sunshine Towing's main driver, neglected or abused a pet donkey kept on plaintiff Nordmeyer's property. The deputy eventually seized the donkey from plaintiff Nordmeyer's property pursuant to a court order. Chris Nordmeyer disputed the allegations of donkey neglect with the deputy. Plaintiffs allege defendant Cundiff, "or a person acting at his behest," advised the Sheriff's Department of the Donkey Incident and the need to remove them from the rotation list. *Id.* On or about October 3, 2009, plaintiffs allege Defendant Cundiff removed plaintiffs from the rotation list.

Plaintiffs further allege defendant Cundiff, until his retirement in December 2009, and since, defendant Vick, have "initiated or ratified an unofficial policy or practice within the Williamson County Sheriff's Office" of refusing to use Sunshine Towing and telling others that Sunshine Towing is no longer in business (Doc. 17, pp. 3-4). When plaintiffs confronted defendant Vick with the allegations of "discriminatory practice," defendant Vick allegedly stated their removal from the rotation list resulted from the Donkey Incident (Doc. 17, p. 4). Plaintiffs state defendants use seven "similarly situated" locally owned and operated small towing businesses to meet the towing needs of the Williamson County Sheriff Department. *Id.* Plaintiffs allege the defendants' practices demonstrate violations

of their equal protection rights based on gender discrimination as plaintiff Nordmeyer is a female (Doc. 17, Counts 1, 3, 5, 7, 9, and 11).  Further, plaintiffs allege "class-of-one" claims against all defendants asserting their removal from the rotation list resulted from the Donkey Incident (Doc. 17, Counts 2, 4, 6, 8, 10, and 12).

Plaintiffs filed their first amended complaint on March 17, 2011, alleging twelve counts of equal protection violations (Doc. 17).  Defendants filed their motion to dismiss (Doc. 20) and memorandum in support (Doc. 21) on March 28, 2011, arguing plaintiffs' claims as to defendants Cundiff and Vick require dismissal as plaintiffs' discrimination claims fail to state causes of action.  Further, defendants argue the claims against defendant Williamson County require dismissal as it cannot be held liable under a *Monell* theory of liability (Doc. 20; Doc. 21).

## LAW AND APPLICATION

### I.      Claims Against Defendant Williamson County (Counts 5, 6, 11, and 12) Dismissed with Prejudice

Defendants argue plaintiffs have improperly asserted *Monell* claims against defendant Williamson County.  *See Monell v. Dept. of Social Servs.*, 98 S. Ct. 2018 (1978) (holding under Section 1983, a municipality is only directly liable if it causes the alleged constitutional violation).  However, both parties concede defendant Williamson County is a necessary party to the extent it is required under state law to pay in the event the Court enters a judgment against the Sheriff in his official capacity.  *See Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632,

636 (7th Cir. 2009) (citing *Carver v. Sheriff of LaSalle County, Ill.*, 324 F.3d 947, 948 (7th Cir. 2003)) (stating, "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer . . . [and] [b]ecause state law requires the county to pay, federal law deems it an indispensable party to the litigation."). In plaintiffs' response to defendants' motion to dismiss, they concede "inartful pleading" as the intention was to add Williamson County as an indispensable party to the litigation pursuant to FEDERAL RULE OF CIVIL PROCEDURE 19; not assert claims of independent liability against Williamson County (Doc. 24, p. 11). Thus, claims five, six, eleven, and twelve against defendant Williamson County are dismissed with prejudice. However, defendant Williamson County remains a necessary party to the action solely as an indemnitor in the event the Court enters a judgment against the Sheriff in his official capacity.

## II. Claims of Equal Protection Violations Against Defendants Cundiff and Vick (Counts 1, 2, 3, 4, 7, 8, 9, and 10) Dismissed Without Prejudice for Failure to State a Cause of Action

### a. Legal Standards

#### i. Pleading Standards

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court concluded in an antitrust case that, in addition to providing notice, the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. The Court reasoned that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" success on

the claim "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 557.

The Court went further in *Ashcraft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009), holding that the "plausibility" standard applies to "all civil actions."  *Id.* at 1953.   The Court stated a plaintiff may not allege discriminatory intent in conclusory fashion:  "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigorous—though still operative—strictures of Rule 8."  *Id.* at 1954.  The Court did not identify what level of specificity is required, but concluded it was not enough for the plaintiff to allege the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"  *Id.* at 1951.  Applying the plausibility standard to the complaint, the Court in *Iqbal* concluded the plaintiffs had failed to satisfy Rule 8:

> The complaint does not show, or even intimate, that [the defendants] purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin.  All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity.

*Id.* at 1952.  Under *Iqbal*, plausibility means the allegations in a complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* at 1949. This means a plaintiff must include some allegations about each element, or at least allegations from which a court can draw reasonable inferences about each of the elements. *Twombly*, 550 U.S. at 562 ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.").

Prior to *Twombly* and *Iqbal*, it was not difficult for a plaintiff to satisfy the Rule 8 standard for a claim of discrimination. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (finding allegation of, "I was turned down for a job because of my race" sufficient to state a claim for race discrimination); *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (finding when plaintiff alleges that "discriminatory motives impelled discriminatory treatment of him, he has stated an equal protection claim"). More generally, the Seventh Circuit Court of Appeals interpreted Rule 8 to require plaintiffs to do no more than to provide enough notice to allow the defendant to file an answer. *See, e.g.*, *Christensen v. County of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Plaintiffs did not need to plead facts for each element of a claim. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). After *Twombly* and *Iqbal*, conclusory allegations of discrimination are no longer sufficient to satisfy federal pleading requirements. A complaint does not need detailed factual assertions, just enough facts to raise it above the level of mere speculation.

In sum, *Twombly* and *Iqbal* establish two new principles of pleading in all cases: (1) fair notice alone will not suffice; a complaint must be "plausible" as well; and (2) a court may not accept "conclusory" allegations as true. *See Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009). The difficulty is the two cases contain few guidelines to help lower courts discern the difference between a "plausible" and implausible claim and a "conclusion" from a detailed fact. Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. In making the plausibility determination, a court may consider whether there are "obvious alternative explanation[s]," *Twombly*, 550 U.S. at 567, to the one alleged in the complaint, but the court is not to weigh the defendant's and plaintiff's stories to determine which one is "more plausible." *Id.* at 556. Similarly, the Court did not describe what it meant by "conclusory statements" except to say a complaint must provide "factual context," *id.* at 1954, or "factual enhancement." *Id.* at 1949. However, the Court made clear in *Iqbal* that it is not enough to identify the discriminatory act and the characteristic that prompted the discrimination. *See Iqbal*, 129 S. Ct. 1927.

### ii.  Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Traditionally, the Equal Protection Clause is understood as protecting members of vulnerable groups from unequal

treatment attributable to the state. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). It also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called "class of one." *Id.* The Equal Protection Clause has no application where a plaintiff is asking for a revision of policy rather than for a restoration of equality. *Id.* at 943.

To state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) she is otherwise similarly situated to members of the unprotected class; (2) she was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

In contrast, a plaintiff states a class-of-one equal protection claim by alleging that she has been intentionally treated differently from others similarly situated with no rational basis for the difference in treatment. *LaBella*, 628 F.3d at 942; s*ee also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Stated more succinctly, as opposed to demonstrating discriminatory intent, plaintiff must allege defendant had no rational basis for the different treatment.

### b. Application

#### i. Sex Discrimination Claims (Counts 1, 3, 7, and 9)

Plaintiffs allege defendants' removal of Sunshine Towing from the Sheriff's approved rotation list demonstrates sex discrimination as the principal owners of

the remaining towing companies are men, whereas plaintiff Nordmeyer, the principal owner of Sunshine Towing, is a woman (Doc. 17, p. 5).  Specifically, plaintiffs contend the acts and omissions of defendants "in treating Plaintiff Nordmeyer differently than owners and operators of other similarly situated towing businesses in Williamson County, as alleged herein, were intentional acts and omissions of discrimination motivated by animus toward-Plaintiff Nordmeyer on the basis of her sex."  (Doc. 17, pp. 5, 7, 9, 11, 13, 15).  Defendants argue that plaintiffs' first amended complaint fails to adequately plead a prima facie claim of sex discrimination as it lacks facts alleging discriminatory intent.   Thus, the claims require dismissal under *Iqbal/Twombly* (Doc. 21, p. 5).

Plaintiffs' first amended complaint alleges a conclusory statement of discriminatory intent.  Plaintiffs allege Sunshine Towing is woman-owned, while the remaining towing companies are male-owned.  Further, plaintiffs state the acts and omissions at issue were "motivated by animus toward Plaintiff Nordmeyer on the basis of her sex."  However, the complaint does not allege facts demonstrating discriminatory intent.   These bare assertions alleging adverse actions "on the basis of her sex" are nothing more than a "formulaic recitation of the elements" of a sex discrimination claim.  *See Iqbal*, 129 S. Ct. at 1951.  Thus, without factual support, there is not enough to suggest more than a "sheer possibility that defendant acted unlawfully."  *Id.* at 1949.  As such, "the allegations are conclusory, and not entitled to be assumed true."  *Id.* at 1951; *see also Swanson*

*v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (stating conclusory statements "do not add to the notice that Rule 8 demands").

Moreover, in making the determination of whether a claim is plausible on its face, the Court is allowed to entertain "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 567.  In the case at hand, plaintiffs admit the Donkey Incident at least prompted their removal from the rotation list.  (Doc. 17, pp. 3-4). Thus, without factual allegations in support of discriminatory intent, it is equally plausible that the Donkey Incident provided motivation for their removal; not an unlawful intent to discriminate against women. Therefore, as plaintiffs' allegations closely resemble legal conclusions that do not provide defendants adequate notice, the Court dismisses plaintiffs' claims of sex discrimination without prejudice.

### ii.  Class of One Claims (Counts 2, 4, 8, and 10)

Plaintiffs allege their removal from the rotation list demonstrates,

> intentional acts and omissions not rationally related to any legitimate government objective but [] motivated by animus toward Plaintiff Nordmeyer due to or in retaliation for the "donkey incident," and/or some other unstated motive not rationally related to any purpose for which the Williamson County Sheriff's Department engages the services of towing companies.

(Doc. 17, pp. 6, 8, 10, 12, 14, 16).  Thus, plaintiffs assert class-of-one claims. *See LaBella*, 628 F.3d at 942; s*ee also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

## 1. Similarly Situated

At issue, is whether plaintiffs have alleged sufficient facts to demonstrate plaintiffs and the remaining male-owned towing companies are similarly situated. To be considered "similarly situated," "a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella*, 628 F.3d at 942. The "similarly situated" analysis is not a precise formula, but "what is clear [is] that similarly situated individuals must be very similar indeed." *Id.* (internal citations omitted). Whether a comparator is similarly situated is usually a question for the fact-finder. *Id.* However, dismissal at the pleading stage is appropriate where the plaintiff fails to allege facts tending to show that it was similarly situated to any one of the comparators. *See id.* Further, the "similarly situated" requirement is critical to a class-of-one equal protection claim, since the purpose of entertaining such a claim "is not to constitutionalize all tort law." *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004).

The relevant inquiry is the meaning of "all material respects" in the case at hand. Plaintiffs admit the Donkey Incident at least instigated their removal from the rotation list (Doc. 17, pp. 3-4). The facts state the male-owned companies "are locally owned and operated small businesses based in Williamson County" (Doc. 17, p.4). Thus, plaintiffs allege they are similarly situated to the remaining towing companies in "all material respects." Defendants argue the relevant materiality inquiry requires plaintiffs allege the remaining towing services had

similar disputes or negative interactions with defendants, yet received more favorable treatment than plaintiffs (Doc. 21, pp. 6-7). Plaintiffs contend this standard would render it impossible to allege a prima facie equal protection violation claim (Doc. 24, p. 7).

The Court finds *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937 (7th Cir. 2010), particularly instructional. In *LaBella*, the operator of a fire-damaged restaurant brought a class-of-one claim against the village and its manager alleging they prevented the reopening of the restaurant in violation of equal protection, among other things. The plaintiff alleged the defendants discriminated against it while favoring similarly situated restaurants as the defendants allowed comparable restaurants to reopen more quickly. *Id.* at 940.

The court, however, found the amended complaint lacked allegations of comparable fire damage; thus, the restaurants were not similarly situated in "all material respects." The Seventh Circuit noted that briefings and pleadings before it and the lower court made clear the restaurants were inherently different due to the differences in the extent of fire damage. Thus, as the plaintiff conceded a key difference, the extent of damage, the plaintiff could not allege it was similarly situated to other comparable restaurants. *Id.* at 942.

Similarly to the plaintiff in *LaBella*, plaintiffs in the instant action have not alleged they are "similarly situated" in "all material respects" to the towing companies currently on the Sheriff's rotation list. As *LaBella* demonstrates, the meaning of "all material respects" differs depending on the contours of plaintiffs'

allegations.   In *LaBella,* the meaning of "similarly situated" in "all material respects" encompassed more than the size and locality of the restaurants plaintiff claimed received more favorable treatment.   Due to the nature of the allegations, "all material respects" included comparable fire damage. The amount of fire damage among the restaurants at issue was material as it directly related to whether the defendants' decision to allow other restaurants to open, but not plaintiff, was rationally based.   *Id.*

In the case at hand, while plaintiffs allege they are of comparable size and locality to the remaining towing companies currently on the rotation list, they have not alleged facts demonstrating they are "identical or directly comparable in all material respects."   *Id.*   As plaintiffs concede, the Donkey Incident is at least the impetus for the dispute at issue.   Thus, the fact plaintiffs and defendants have had negative interactions is material to their class-of-one claims as it relates to the basis for their removal.

Therefore, in order to allege a prima facie class-of-one claim, plaintiffs must allege facts demonstrating the remaining towing companies have also had negative interactions with defendants, yet received more favorable treatment.   At the very least, plaintiffs must allege similar records of professionalism as the remaining towing companies, as "similarly situated" in "all material respects" encompasses more than the size and locality of the towing companies the defendants currently utilize.   Whether a comparator is similarly situated is usually a question for the fact-finder.   However, dismissal is appropriate here as plaintiffs failed to allege

facts tending to show they were similarly situated to any one of the comparators at issue. *Id.*

## 2. Rational Basis

Further, the Court finds the plaintiffs have not adequately pled facts demonstrating the decision to remove them from the rotation list was irrational. Plaintiffs claim their removal was "motivated by animus toward Plaintiff Nordmeyer due to or in retaliation for the 'donkey incident,' and/or some other unstated motive not rationally related to any purpose for which the Williamson County Sheriff's Department engages the services of towing companies." (Doc. 17, pp. 6, 8, 10, 12, 14). As the Seventh Circuit has explained, in a class-of-one claim,

> [A]llegations of animus do not overcome the presumption of rationality of the government action in question. This standard reflects the fairly intuitive idea that a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.

*Flying J, Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) (upholding trial court's grant of motion to dismiss for failure to state a claim). Further, "it is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *Id.* Moreover, "animosity is not necessarily inconsistent with a rational basis . . . A city presumably could not reject a bid for work on the grounds of race or sex or political animus; it could, however, decide that it cannot get along productively with someone, at least when

that someone has done work on the city's property before." *Id.* at n.2 (citing *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)).

In the case at hand, the plaintiffs have not met their initial burden of pleading facts demonstrating the defendants had no rational basis for removing them from the rotation list.  It is rational to conclude from the pleadings that defendants removed plaintiffs from the rotation list as they found it difficult to work with plaintiffs due to the alleged dispute between plaintiffs' employee and defendant, despite the allegations of animosity.  As plaintiffs have not alleged sufficient facts demonstrating defendants treated plaintiffs differently from similarly situated towing services and because they have not overcome the presumption of rationality, the plaintiffs' class-of-one claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss (Doc. 20).  Counts 5, 6, 11, and 12 are DISMISSED with prejudice.  Counts 1, 2, 3, 4, 7, 8, 9, and 10 are DISMISSED without prejudice.  Further, the Court ALLOWS plaintiffs 30 days to file a second amended complaint, if they determine they can, in good faith, file one that comports with this Order, the Local Rules of this Court, and the FEDERAL RULES OF CIVIL PROCEDURE.

**IT IS SO ORDERED.**  Signed this 28th day of September, 2011.

Digitally signed by David R. Herndon
Date: 2011.09.28 11:21:44 -05'00'

**Chief Judge**
**United States District Court**